EDWIN A. BUCK, TRUSTEE, *vs.* WILLIAM ROSS.

| 68 | 29 |
| 71 | 218 |

First Judicial District, Hartford, May Term, 1896. ANDREWS, C. J., TOR-
RANCE, FENN, BALDWIN and HAMERSLEY, Js.

It is now well settled that in equity the capital stock of a corporation con-
stitutes a trust fund for the payment of debts; and courts will be astute
to detect and defeat any scheme or device which is calculated to with-
draw this fund, or in any way place it beyond the reach of creditors.

The law regards the substance and effect of the transaction, rather than its
form. Accordingly where the defendant, a stockholder in a corpora-
tion known by him to be insolvent, sold his stock to the company at its
par value, and received in return therefor a note and mortgage executed
and delivered directly to him by one *T*, whose mortgage indebtedness to
the company was thereupon discharged in equal amount, it was *held*
that the defendant had thereby withdrawn the assets of the corpora-
tion, and was liable for the amount so received by him, in a suit brought
against him by the trustee of the insolvent corporation.

[Argued May 5th—decided June 5th, 1896.]

ACTION to recover the value of certain assets of an insol-
vent manufacturing company, alleged to have been trans-
ferred to the defendant in exchange for his stock, and in
fraud of the creditors of the company; brought to the Supe-
rior Court in Windham County and tried to the court,
*Robinson, J.;* facts found and judgment rendered for the
plaintiff, and appeal by the defendant for alleged errors in
the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Charles E. Perkins* and *George W. Meloney*, for the appel-
lant (defendant).

*Elliot B. Sumner* and *Charles E. Searls*, for the appellee
(plaintiff).

ANDREWS, C. J. The plaintiff is the trustee in insolvency
of the W. G. & A. R. Morrison Company, a corporation
legally organized pursuant to the laws of this State, and
located at Windham. That corporation was declared on the

28th day of February, 1894, to be insolvent, by the Court of Probate for the district of Windham, and the plaintiff was appointed the trustee. The defendant had been a stockholder in that corporation, owning forty shares of its stock of the par value of $100 each.

The complaint alleges that said corporation was on the 29th day of July, 1889, insolvent, and thereafter continued to be so insolvent until the date it was so declared by the Court of Probate; and that "the defendant, on the 14th day of June, 1890, . . . . well knowing the insolvency of said company, with the purpose and design of escaping financial loss and evading liability as a stockholder of said company, and in fraud of the then existing and future creditors of said company, unlawfully transferred and surrendered to said company said forty shares of the capital stock of the said company, and received in exchange therefor from said company, $4,000 in good and valuable notes and securities of said company, whereby the defendant unlawfully took from the capital of said company the sum of $4,000, which he still retains." It is also alleged that the estate of said corporation is deeply insolvent, that said stock now in the hands of the plaintiff is wholly worthless, and that the amount so illegally withdrawn by the defendant is needed to pay the claims of creditors proved against the said insolvent estate. The plaintiff claimed to recover the value of said shares with interest.

The Superior Court found in substance, that the averments of the complaint were true, and rendered judgment for the plaintiff. As to the transaction between the defendant and the said corporation on the 14th day of June, 1890, this appears:—

Prior to that day the said corporation had sold to one A. G. Turner, a large amount of silk manufacturing machinery, and had taken his notes therefor aggregating in the whole more than $40,000. These notes were absolutely secured by said machinery. One of these notes for the sum of $2,500 had been sold by the said corporation to the defendant. On said day the defendant re-conveyed said $2,500

note to the corporation, transferred to it the said forty shares of its capital stock, and gave in cash $3,384, and received from the said corporation $10,000 of said Turner's notes. The corporation surrendered to Turner $10,000 of his said notes which were secured upon said machinery, and in lieu thereof Turner gave his notes for the same amount directly to the defendant, and secured these by a mortgage of other property. These notes, so secured, were, and are, perfectly good.

In *Crandall* v. *Lincoln*, 52 Conn. 73, 94, this court said : " The stock of a corporation is its only basis of credit. Unlike a partnership, its members generally are not individually liable for its debts. The character, reputation and credit of its promoters, do not attach to the corporation itself, except to a limited extent. Hence it is of vital importance that the law should rigidly guard and protect the capital stock. Otherwise, especially in these days when so large a portion of the business of the country is carried on by corporations, confidence, on which the prosperity of the country largely depends, would be seriously impaired. Hence it is that in equity the capital stock of a corporation is now regarded as a trust fund for the payment of debts. The creditors have a lien upon it, which is prior in point of right to any claim which the stockholders as such can have upon it; and courts will be astute to detect and defeat any scheme or device which is calculated to withdraw this fund, or in any way to place it beyond the reach of creditors ;" citing *Wood* v. *Dummer*, 3 Mason, 308. This is the settled law. In Cook on Stockholders, § 312, it is said : " The objection usually made to allowing a corporation to purchase its own stock, is that thereby the corporation funds are expended and no property is received by the corporation except the right to resell. . . . The better rule goes still further, and declares that if a corporation, by a purchase of shares of its own capital stock thereby reduces its actual assets below its capital stock, or if its actual assets at that time are less than the capital stock, such purchase may be impeached and set aside, and the vendor of the stock rendered liable thereon at the instance of a

corporate creditor." Morawetz on Corporations, § 781 ; *Webster* v. *Upton*, 91 U. S. 65, 67 ; *Hightower* v. *Thornton*, 8 Geo. 486, 499.

The appellant does not dispute this rule of law. He only attempts to extricate this case from that rule. His claim is, that as the property on which Turner gave a mortgage to secure the notes he had given to the defendant, was property which had never belonged to the corporation, therefore the defendant had taken nothing from the fund from which the creditors of the corporation were to be paid, and consequently ought not to be required to pay back anything. That claim is wholly inadmissible in this court. The finding of the Superior Court settles the facts adversely to such claim. It is found that by the said transaction and sale the defendant obtained from the corporation, in exchange for his forty shares of stock, valuable assets of the company ; and that the assets thus obtained were of the value of $4,000. That finding is conclusive, unless inconsistent with the subordinate facts set out. Here the finding is fully supported by the facts detailed in it. The Turner notes, held by the said corporation and secured upon the machinery, were perfectly good. The Turner notes which the defendant obtained, secured upon other property, were no better. The Turner notes were the real thing which the defendant took out of the assets of the corporation. The security given for the notes, whether before or after the 14th of June, 1890, was only an incident. There is no subtility of words which can make the incident displace the real thing, or make a shadow more important than the substance.

There is no error.

In this opinion the other judges concurred.